In the United States District Court
Southern District of Texas
Houston Division

| | | |
|---|---|---|
| Jake Parker | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | Jury Demanded |
| | § | |
| Federal Express Corporation | § | |
| d/b/a FedEx Express | § | |
| | § | |
| Defendant | § | |

## Plaintiff's Original Complaint

Plaintiff Jake Parker ("Parker" or "Plaintiff") files this Original Complaint against

Federal Express Corporation d/b/a FedEx Express ("FedEx" or "Defendant") and

shows:

## Parties

1. Plaintiff Jake Parker is an individual citizen of Texas.

2. Defendant Federal Express Corporation d/b/a FedEx Express is a foreign for-

profit corporation doing business in Texas. It may be served by serving its registered

agent, CT Corp. System, 1999 Bryan Street, Suite 900, Dallas TX 75201-3136.

## Summary of Legal Claims.

3. Parker is a man of Russian Jewish ancestry. Though born Jewish, Parker

converted to the Muslim religion and is now a practicing Muslim. FedEx subjected

Parker to a hostile and discriminatory work environment because of his religion, race, and national origin. FedEx subjected Parker to disparate treatment in the terms and conditions of the workplace because of his religion, race, and national origin.

4.   FedEx retaliated against Parker  after he engaged in protected activity.

5.   Parker sues FedEx for discrimination based on his religion, race, and national origin and for retaliation under Title VII, 42 U.S.C. § 1981, and Texas Labor Code Chapter 21.

## Venue and Jurisdiction

6.   Venue is proper in Harris County because FedEx does business in Harris County.

7.   This Court has federal jurisdiction over the claims asserted under Title VII and 42 U.S.C. § 1981. The Court has supplemental jurisdiction over Parker's state law claims.

## Factual Background

**Jake Parker's Background.**

8.   Parker is a man of Russian Jewish descent. Though born Jewish, Parker converted to the Muslim religion and is a practicing Muslim. Parker is married to a woman of Indian and Pakistani national origin who is also a practicing Muslim.

9.   FedEx hired Parker on July 11, 2016 to work as a senior vehicle technician in the LKSA station. At the time of his termination, Parker's immediate supervisor was Bruce Clarke, the manager of fleet maintenance. Parker's Senior Manager was Kelley Klimek and his managing director was Wayne Skinner.

**FedEx subjected Parker to a hostile work environment because of his religion, race, and national origin.**

10.   FedEx employed another vehicle technician named Andy Wooten. Wooten was not a good performer and often engaged in inappropriate horse-play at work. Wooten also failed to do some of his job duties.

11.   On January 13, 2021, Wooten was throwing tires into the tire bin at FedEx instead of properly stacking the tires. Another employee, Jonathan Lefevre, asked everyone to go to the tire bin to discuss the tires. In that discussion, Parker pointed out to Wooten that the tires needed to be properly stacked.

12.   Wooten then became physically aggressive with Parker. Wooten got into Parker's face and twice threatened to fight with Parker. Two other FedEx employees, Jonathan Lefevre and Dustin Dempsey, had to physically restrain Wooten from attacking Parker. The FedEx video feed should have recorded this incident on its camera.

13.   Parker immediately reported Wooten's physical threat against him to his manager, Bruce Clarke. William Adam Sempe also reported this incident to Clarke. Yet Clarke did nothing.

14.   FedEx, through Clarke, took no action against Wooten for his physical threat against Parker. Under FedEx policy, Wooten should have been disciplined for threatening to fight with Parker and needing to be physically restrained from attacking Parker.

15.   FedEx employees Jonathan Lefevre, Dustin Dempsey and Adam Sempe witnessed the incident and know Parker reported this incident to Clark. They prepared statements about the incident with Wooten, but were told that their statements were not needed by Clarke.

16.   FedEx, through Wooten, made hostile, harassing, inappropriate and offensive comments to Parker about his race, his national origin and his religion while Wooten worked with Parker.

17.   FedEx, through Wooten, created a hostile work environment by saying things to Parker such as:

- He called Parker a "Jew."
- Wooten pointed the scanner with the red laser on it at Parker's head and hollered "derka derka," which is an ethnic slur referring to people of the Muslim religion.
- Wooten told a "joke"  that said "how come Nazis don't get invited to the BBQ? Because they burn the franks."
- Wooten would say Parker's Indian wife is going to come with her suicide vest and she's a terrorist.
- Wooten would say Parker's truck is going to blow up.
- Wooten would say he wants to ride Moonshine (Parker's horse) naked.
- Wooten would talk about his group orgy over  the weekend and invite Parker and say Parker's wife is not invited.
- Wooten would tell Parker he should have been "gassed" with all his people.
- Wooten would say to Parker about he and his family, "y'all don't celebrate Christmas and that's wrong."
- Wooten would say "oh my, don't bring your pressure cooker."
- Wooten would say I'm going to come to Indigo Lakes to take lessons at the terrorist training camp on Parker's 10 acres.
- Wooten would ask if Parker and his wife played "cowboy and Indians."

- • Wooten constantly would say Parker was "jewing people out of money."
- • Wooten said Parker had one of those voodoo dolls and that Parker could hurt him.
- • Wooten said, "don't blow up" Wooten's car because he knows "how [Parker's] people are."

18.  Wooten made these hostile and offensive comments to Parker repeatedly during Parker's employment.

19.  Wooten's hostile and offensive comments to Parker were witnessed by other FedEx employees, including William Adam Sempe, Dustin Dempsey, and Jonathan Lefevre.

20.  Parker repeatedly complained about Wooten's harassing, hostile and offensive comments to Bruce Clarke.

21.  Wooten knew that Parker was complaining about him to Clarke.

22.  Other FedEx employees also complained to Clarke about Wooten's inappropriate and harassing conduct.

23.  FedEx took no action to stop Wooten's offensive, hostile and harassing behavior. Clarke took no effective action to stop Wooten from making offensive, hostile and harassing statements to Parker.

24.  Parker expressed frustration about this failure with Clarke, who simply asked Parker to "please be patient."

25.  FedEx, through Clarke, made offensive, hostile and harassing comments to  and about Parker. Clarke made offensive comments about Parker's wife and the Indian food

that Parker brought to work for his lunch. Clarke said Indian people smell terrible and that Indian people do not shower. Clarke also said that Indian food stinks.

26.   As a practicing Muslim, Parker has a full beard. Clarke targeted Parker for having a full beard. Parker told Clarke he needed to fill out the FedEx form asking for a religious accommodation to show he had his beard for religious reasons pertaining to his Muslim faith. After Parker told Clarke he needed to seek the religious accommodation, Clarke told him to forget about asking for a religious accommodation.

27.   Other FedEx employees made comments to Parker that were hostile and offensive based on his race and religion.

**FedEx, through Wooten, retaliated against Parker for Parker's complaints about him to FedEx.**

28.   On Saturday, February 20, 2021, Wooten continued to make offensive and harassing comments about Parker's race/national origin and religion. Parker was offended by Wooten's actions.

29.   At the end of the day, Wooten took a tool charger off of Parker's  tool box in the shop and would not give it back. Dustin Dempsey had given the charger to Parker for a remote control vehicle that Parker was going to get after work. Parker repeatedly asked Wooten to stop messing around and give him back the charger. Wooten refused to do so.

30.   By this time, Parker had clocked out of work and was trying to leave work for the day. Parker again asked Wooten to return Parker's tool charger. Wooten again refused to do so.

31.    Frustrated, Parker went into the shop and hollered for Wooten to give Parker the tool charger. Parker had some of his other tools in his hand when he did this since he was trying to leave work. When Parker hollered at Wooten, he and Wooten were the only two FedEx employees in the office. Their coworkers were outside and could not see their interactions.

32.    After Parker hollered at Wooten, Wooten came outside of the FedEx office and gave Parker the tool charger and said jokingly, "Oh my, I'm just messin' with you."  Parker told Wooten he was sorry for yelling and allowing it to escalate by allowing Wooten to get to him such that he yelled. Wooten apologized to Parker for messing with his stuff and even sent him some text messages to that effect.

33.    Parker left work and went to a hobby shop. Wooten followed Parker to the same hobby shop even though it was the opposite direction from Wooten's home. After Parker made a large purchase at the hobby shop, Wooten then offered to help Parker carry some of his purchases to his vehicle, which Parker reluctantly accepted—something he likely would not have done if he had been in fear for his life.

**Parker reported Wooten's inappropriate conduct to Bruce Clarke on February 22, 2021 and February 23, 2021.**

34.    On February 22, 2021, Parker orally reported to Clarke that Wooten was not doing his job. FedEx should have video of Parker going upstairs and into Clarke's office that morning. Parker also told Clarke about the incident with Wooten taking his battery charger and initially refusing to return it to him. Parker also told Clarke again about

Wooten's continued hostile and offensive comments about his race/national origin and his religion.

35.   After Parker had orally reported Wooten's conduct to Clarke on February 22, 2021, Parker also sent Clarke a text message at 4:16 a.m. on February 23, 2021, noting that Parker was "in dire need of a meeting with you as soon as you are available." Clarke did not respond to Parker's text that morning.

36.   Later on February 23, 2021, *after* Parker made this complaint to Clarke about Wooten, Clarke called Wooten in to discuss Parker's complaints about him. Knowing that Parker had complained about him, Wooten told Clarke in that meeting that Parker had threatened Wooten during the confrontation and made Wooten fear for his life.

37.   FedEx suspended Parker on February 23, 2021 because of the Wooten accusation about him. On February 23, 2021, FedEx had Parker write a statement about what happened on Saturday, February 20, 2021. FedEx also had Wooten, Adam Sempe and Dustin Dempsey write statements on February 23, 2021.

38.   FedEx investigated the allegations against Parker instead of investigating Parker's complaints about Wooten—though Parker had made his allegations first.

39.   FedEx's investigation was biased and incomplete. Clarke allowed Wooten to prepare his statement at his office computer where Wooten had access to and the ability to review the statements provided by other witnesses.

40.   Clarke sat with witnesses as they prepared their statements and edited their statements. A FedEx employee reported to FedEx that Clarke was looking over the shoulders of employees as they wrote their statements and told them to "be sure to stick to [their] statements so we can make this place better."

41.   Some persons identified, such as Dustin Dempsey and William Sempe, had exited the building before the confrontation between Wooten and Parker. Thus, neither could have heard the conversation between Parker and Wooten. If their statements said otherwise, that would not be correct. FedEx should have video recordings of the incident and should have been able to determine that neither Dempsey or Sempe was in the building when the confrontation occurred.

42.   FedEx ignored conflicting evidence provided in the investigation and discounted evidence favorable to Parker.

43.   One FedEx employee reported to FedEx that Clarke (Parker's supervisor), after learning that Parker's wife was Indian,  had told employees in the shop they needed to get rid of Parker before Parker could report Clarke for the hostile and offensive comments Clarke made about Indians and Middle Easterners. This employee reported to FedEx that on the day after Parker was suspended, Clarke came into the shop and asked "aren't y'all excited that we got Jake gone?"

44.   FedEx fired Parker on March 16, 2021.

45.   FedEx contended Parker had violated his security (workplace violence) policy and its acceptable conduct policies.

46.   Following his March 16, 2021 termination, Parker appealed his termination under the FedEx Guaranteed Fair Treatment Process ("GFTP"). FedEx upheld Parker's termination at each step.

**Parker timely filed his EEOC charge and this lawsuit.**

47.   Parker timely filed his EEOC Charge No. 460-2021-02987 on June 3, 2021. With his charge, Parker alleged discrimination because of race, religion, national origin and retaliation. After his charge had been on file for over 180 days, Parker requested his right to sue letter. Parker received  his Notice of Right to Sue on May 5, 2022.

48.   Parker timely sues.

## Causes of Action

### Title VII and Texas Labor Code Chapter 21
### Religious Discrimination:  Hostile Work Environment

49.   Parker incorporates the preceding paragraphs as if fully restated.

50.   FedEx is an employer for Title VII, 42 U.S.C § 42 U.S.C. 2000e(b) and Texas Labor Code § 21.002(8).

51.   Parker is an employee as defined by 42 U.S.C. § 2000e(f) and Texas Labor Code § 21.002(7).

52.   Parker is of Russian Jewish ancestry. Though born Jewish, Parker later converted his religion and is now a practicing Muslim.

53.    Parker was qualified to perform his job duties at FedEx.

54.    FedEx discriminated against Parker and subjected him to a hostile work environment based on both his Jewish religion and his Muslim religion.

55.    FedEx, through Wooten, made offensive, harassing and hostile statements to Parker about his status as a Jewish man and as a practicing Muslim.

56.    FedEx, through Wooten, made offensive statements about Parker's Jewish heritage and religion. This included repeatedly saying things such as:

  a.  Referring to Parker as a Jew in a derogatory tone.

  b.  Telling a joke that asked, "How come Nazis don't get invited to the barbecue?"  The answer to his joke: "Because they burn the franks."

  c.  Saying that Parker should have been "gassed" with "all of his people."

  d.  Commenting that Parker and his family do not celebrate Christmas "and that's wrong."

  e.  Saying that Parker was "Jewing people out of money."

57.    FedEx, through Wooten, made offensive statements about Parker's Muslim religion and implied that Parker and his family, as practicing Muslims, were  terrorists. These statements included things such as:

  a.  Pointing a red laser scanner at Parker's forehead and hollering "derka, derka, derka."[1]

  b.  Saying that Parker's wife is going to come with her suicide vest and that his wife was a terrorist.

---

[1] This term is recognized as a racial slur.
https://en.wikipedia.org/wiki/Talk%3AList_of_ethnic_slurs%2FArchive_9?oldformat=true#Dirka_Dirka/Derka_Derka/Durka/Durka.

      c.   Saying Parker's truck was going to blow up.

      d.   Saying Parker and his family "don't celebrate Christmas and that's wrong."

      e.   Saying it would come to Indigo Lakes to take lessons at the terrorist training camp on Parker's 10 acres.

      f.   Saying "don't blow up my car" because he knows "how [Parker's] people are.

58.   Other FedEx employees confirmed to FedEx that Wooten would point the red laser beam at Parker's forehead and say "derka derka  derka" and that Wooten would shout "hallllallaalhahlhalaalahalla" as soon as he saw Parker.

59.   FedEx subjected Parker to slurs, insults, jokes and other offensive comments of a religious nature. These statements were unwelcome and offensive and were based on Parker's Jewish heritage and faith and on Parker's faith as a practicing Muslim.

60.   The conduct to which FedEx subjected Parker was sufficiently severe or pervasive to alter the conditions of Parker's employment and to create hostile or abusive work environment based on Parker's religions.

61.   Parker perceived the working environment to be abusive or hostile as would any reasonable person in Parker's circumstances. The hostile statements altered the terms and conditions of Parker's workplace. Parker was offended and uncomfortable because of these statement. The statements caused Parker stress and discomfort. Parker expressed to FedEx that Wooten's offensive conduct was affecting his job and his home life.

62.   FedEx employees William Adam Sempe, Dustin Dempsey, and Jonathan Lefevre confirmed that Wooten made these kinds of hostile and offensive statements to Parker.

63.   Parker complained to FedEx about Wooten's conduct by complaining to Clarke. Parker also complained to FedEx about the hostile environment created by Clarke.[2]

64.   FedEx, through Wooten, created a hostile and abusive working environment by falsely accusing Parker of threatening him. This false accusation was the catalyst for Parker's termination.

65.   Because of Parker's complaints (and the complaints of other FedEx employees), FedEx knew, or in the exercise of reasonable care, should have known of the harassment of Parker and did not take prompt remedial action to protect Parker from this hostile and abusive environment or from the false allegation by Wooten, a person biased against Parker's religious faiths.

66.   FedEx subjected Parker to a harassing, hostile and abusive working environment because of Parker's religion.

67.   FedEx knew or, in the exercise of reasonable care, should have known that Parker was being harassed because of his religion. FedEx failed to take prompt remedial action to protect Parker.

---

[2] Parker did not complain to FedEx about Clarke's offensive comments until after he was terminated. However, Clarke was his direct supervisor.

68.   FedEx  violated Title VII  and Texas Labor Code Chapter 21 by subjecting Parker to a hostile and abusive work environment because of his religion and causing his termination because of his religion.

69.   FedEx's discriminatory actions were taken with malice and/or a reckless disregard for Parker's rights.

70.   FedEx's violation of Title VII and Texas Labor Code Chapter 21 damaged Parker. Parker suffered compensatory damages for intangible harms and losses from being subjected to this hostile work environment. Parker lost his income and benefits when he was fired.

71.   Parker seeks to recover the damages to which he is entitled because of FedEx's violation of Title VII and Texas Labor Code Chapter 21, including equitable relief of reinstatement the recovery of his back pay, lost employment benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorneys' fees and costs.

### Title VII and Texas Labor Code Chapter 21
### Religious Discrimination:  Disparate Treatment

72.   Parker incorporates the preceding paragraphs as if fully restated.

73.   FedEx is an employer for Title VII, 42 U.S.C § 42 U.S.C. 2000e(b) and Texas Labor Code § 21.002(8).

74.   Parker is an employee as defined by 42 U.S.C. § 2000e(f) and Texas Labor Code § 21.002(7).

75.   Parker was qualified to do his job as a senior vehicle technician and performed successfully in that role from his hire date of July 11, 2016 until he was terminated on April 15, 2021.

76.   FedEx discriminated against Parker and subjected him to disparate treatment as compared to employees of a different faith at FedEx.

77.   Wooten, a Christian male, threatened Parker on January 13, 2021 and twice had to be physically restrained by other FedEx employees from attacking Parker. Despite Parker's complaint to Clarke about this incident, FedEx took no action to investigate Wooten's threatening behavior and did not discipline or terminate Wooten for his threats against Parker.

78.   Wooten, a Christian male, repeatedly made statements hostile to Parker because of his Jewish heritage and faith and his current Muslim faith. Wooten made multiple offensive statements to Parker on February 20, 2021 and finally goaded Parker into a dispute by taking Parker's personal tool charger off of Parker's truck and refusing to return it to Parker. Only after Parker yelled at Wooten did Wooten finally return the tool charger. Parker was holding tools in his hand when he yelled at Wooten, but did not threaten Wooten with the tools. Wooten then falsely accused Parker of threatening him and putting Wooten in fear of his life. This false allegation was the catalyst for Parker's termination.

79.   FedEx subjected Parker to disparate treatment because of his religion.

80.  FedEx treated Parker differently than it treated Wooten, a Christian male, after the dispute on January 13, 2021. FedEx did not investigate Parker's complaint about Wooten. FedEx took no disciplinary action against Wooten even though Parker reported the incident to Clarke.

81.  FedEx treated Parker differently than Wooten, a Christian male, because it terminated him after Wooten falsely complained that Parker had threatened him on February 20, 2021. FedEx's decision to terminate Parker was influenced by Wooten, a person with a known bias against Parker's religious beliefs.

82.  FedEx has treated Parker differently than other FedEx employees involved in physical altercations in the workplace and who were not terminated. Upon information and belief, those employees are of the Christian faith.

83.  FedEx subjected Parker to harsher discipline than his Christian peers and terminated him for things for which it did not terminate his Christian peers

84.  FedEx discriminated against Parker by terminating him because of his religion in violation of Title VII and Texas Labor Code Chapter 21.

85.  FedEx's stated reason for terminating Parker is a pretext for religious discrimination.

86.  FedEx violated Title VII and Texas Labor Code Chapter 21 by discriminating against Parker because of his religion.

87.   FedEx's discriminatory actions were taken with malice and/or a reckless disregard for Parker's rights.

88.   FedEx's violation of Title VII  and Texas Labor Code Chapter 21 damaged Parker. Parker lost his income and benefits when he was fired. Parker lost valuable retirement benefits when he was terminated.

89.   Parker seeks to recover the damages to which he is entitled because of FedEx's violation of Title VII and Texas Labor Code Chapter 21, including equitable relief such as reinstatement, the recovery of his back pay, lost employment benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorneys' fees and costs.

## 42 U.S.C. § 1981 Race Discrimination

90.   Parker incorporates the preceding paragraphs as if restated.

91.   42 U.S.C. § 1981 prohibits race discrimination in the making of and enforcing of contracts. This statute provides that "all persons … shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens."  This includes contracts of employment.

92.   A person of Jewish descent has protection from race discrimination under 42 U.S.C. § 1981. *Saint Francis Coll. v. Al-Khazraji,* 481 U.S. 604, 611, 107 S. Ct. 2022, 2028, 95 L. Ed. 2d 582 (1987) ("The 1863 version of the New American Cyclopaedia divided the Arabs into a number of subsidiary races, vol. 1, p. 739; represented the Hebrews as of the Semitic

race.") *See also Bonadona v. Louisiana Coll.*, No. 1:18-CV-00224, 2019 WL 4073247, at *2 (W.D. La. Aug. 28, 2019).

93.   FedEx subjected Parker to a hostile work environment because of his Jewish race.

94.   FedEx discriminated against Parker because of his Jewish race by subjecting him to disparate terms and conditions in the workplace.

95.   FedEx discriminated against Parker by terminating him at the instigation of a person who harbored an animus against him because of his Jewish race.

96.   FedEx, through Wooten, made offensive statements about Parker's Jewish heritage and faith. This included repeatedly saying things such as:

   a.   Referring to Parker as a Jew in a derogatory tone.

   b.   Telling a joke that asked, "How come Nazis don't get invited to the barbecue?"  The answer to his joke was "Because they burn the franks," which was a derogatory reference to persons of Jewish faith.

   c.   Saying that Parker should have been "gassed" with "all of his people."

   d.   Commenting that Parker and his family do not celebrate Christmas "and that's wrong."

   e.   Saying that Parker was "Jewing people out of money."

97.   These hostile and offensive statements were severe and pervasive and altered the terms and conditions of Parker's workplace. These hostile and offensive statements made Parker uncomfortable at work and caused him distress both in the workplace and at home.

98.   FedEx, through Wooten, made statements hostile to Parker because of his Jewish heritage. Wooten made multiple offensive statements to Parker on February 20, 2021. After harassing him during the day (a fact confirmed by FedEx witnesses), Wooten goaded Parker into a verbal dispute by taking Parker's personal tool charger off of Parker's truck and refusing to return it to Parker.

99.   After Parker reported Wooten to Clarke, Wooten then falsely accused Parker of threatening him and putting Wooten in fear of his life. This false allegation was the catalyst for Parker's termination.

100. FedEx subjected Parker to disparate treatment because of his race when it terminated him. FedEx fired Parker because of a dispute that Wooten instigated due to his animus with Parker's Jewish race. FedEx's decision to terminate Parker was influenced by Wooten, a person with a known bias against Parker's Jewish race.

101. FedEx has treated Parker differently than other FedEx employees who are not Jewish and who were involved in workplace disputes but who were not terminated. FedEx treated Parker differently than it did Wooten by not investigating Parker's complaints in January 2021 that Wooten threatened him and had to be physically restrained by two employees from attacking him.

102. FedEx discriminated against Parker by creating a hostile work environment and also terminating him because of his race in violation of 42 U.S.C. § 1981.

103. FedEx's discriminatory actions were taken with malice and/or a reckless disregard for Parker's rights.

104. FedEx's stated reason for terminating Parker is a pretext for race discrimination.

105. FedEx's violation of 42 U.S.C. § 1981 damaged Parker. Parker lost his income and benefits when he was fired. Parker lost valuable retirement benefits when he was terminated.

106. Parker seeks to recover the damages to which he is entitled because of FedEx's violation of 42 U.S.C. § 1981, including equitable relief such as reinstatement, the recovery of his back pay, lost employment benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorneys' fees and costs.

**Title VII and Texas Labor Code Chapter 21  National Origin Discrimination**

107. Parker incorporates the preceding paragraphs as if fully restated.

108. FedEx is an employer for Title VII, 42 U.S.C § 42 U.S.C. 2000e(b) and Texas Labor Code § 21.002(8).

109. Parker is an employee as defined by 42 U.S.C. § 2000e(f) and Texas Labor Code § 21.002(7).

110. Parker is of Russian Jewish ancestry. Parker is married to an Indian woman of Indian and Pakistani ancestry, a fact known to Parker's coworkers at FedEx.

111. Parker was qualified to perform his job duties at FedEx. FedEx discriminated against Parker and subjected him to a hostile work environment because of his Russian Jewish ancestry and because of his affiliation with his Indian wife.

112. FedEx, through Wooten, made offensive, harassing and hostile statements to Parker about his status as a Jewish man and Parker's Indian wife. Employment discrimination based on national origin group or ethnicity includes discrimination based on ethnicity, physical, linguistic, or cultural traits and also includes discrimination against an individual because of his association with a person of a particular national origin. [3]

113. FedEx, through Wooten, made offensive statements about Parker's Jewish heritage and faith. This included repeatedly saying things such as:

    a.  Referring to Parker as a Jew in a derogatory tone.

    b.  Telling a joke that asked, "How come Nazis don't get invited to the barbecue?"  The answer to his joke was "Because they burn the franks," which was a derogatory reference to persons of Jewish faith.

    c.  Saying that Parker should have been "gassed" with "all of his people."

    d.  Commenting that Parker and his family do not celebrate Christmas "and that's wrong."

    e.  Saying that Parker was "Jewing people out of money."

---

[3] https://www.eeoc.gov/laws/guidance/eeoc-enforcement-guidance-national-origin-discrimination.

114. FedEx, through Wooten, said offensive and hostile statements about Parker's wife's national origin, such as:

      a.  Parker's wife is going to come with her suicide vest and she is a terrorist.

      b.  Telling Parker that his wife was a terrorist because she was an Indian.

      c.  Parker and his wife do not celebrate Christmas and that "that's wrong."

      d.  Asking if Parker and his wife played "cowboys and Indians."

      e.  Saying he would come lessons at Indigo Lakes at Parker's terrorist training camp on his 10 acres.

115. FedEx, through Clarke, also made offensive and hostile statements to Parker about his Indian wife. Clarke said that Indian people smell bad and do not shower. When Parker brought Indian food to work for lunch, Clarke would complain that Indian food smelled bad. These statements were unwelcome and offensive and were derogatory to Parker based on his affiliation with his Indian wife.

116. Other FedEx employees confirmed that Clarke, the supervisor, likewise made offensive comments about persons of Middle Eastern descent that set the tone in the shop. Clarke made derogatory comments about Middle Eastern women. One FedEx employee reported that after Clarke discovered Parker's wife was Indian, Clarke told the other employees in the shop they needed to get rid of Parker before Parker could report him.

117. The conduct to which FedEx subjected Parker was sufficiently severe or pervasive to alter the conditions of Parker's employment and to create a hostile or abusive work

environment because of Parker's national origin and his affiliation with his Indian wife's national origin.

118. Parker perceived the working environment to be abusive or hostile as would any reasonable person in Parker's circumstances. The hostile statements altered the terms and conditions of Parker's workplace. Parker was offended and uncomfortable because of these statement. The statements caused Parker stress and discomfort.

119. Parker complained to FedEx about Wooten's conduct by complaining to Clarke. Parker also complained to FedEx about the hostile environment created by Clarke.

120. Because of Parker's complaints (and the complaints of other FedEx employees), FedEx knew, or in the exercise of reasonable care, should have known of the harassment of Parker and did not take prompt remedial action to protect Parker from this hostile and abusive environment.

121. FedEx subjected Parker to a harassing, hostile and abusive working environment because of Parker's national origin and his association with his Indian wife.

122. FedEx knew or, in the exercise of reasonable care, should have known that Parker was being harassed because of his national origin and that of his wife. FedEx failed to take prompt remedial action to protect Parker.

123. FedEx  violated Title VII  and Texas Labor Code Chapter 21 by subjecting Parker to a hostile work environment because of his national origin and his association with his Indian wife.

124. FedEx discriminated against Parker by terminating Parker because of his national origin and his association with his Indian wife.

125. FedEx's discriminatory actions were taken with malice and/or a reckless disregard for Parker's rights.

126. FedEx's violation of Title VII and Texas Labor Code Chapter 21 damaged Parker. Parker suffered compensatory damages for intangible harms and losses from being subjected to this hostile work environment. Parker lost his income and benefits when he was fired.

127. Parker seeks to recover the damages to which he is entitled because of FedEx's violation of Title VII and Texas Labor Code Chapter 21, including equitable relief of reinstatement the recovery of her back pay, lost employment benefits, front pay, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorneys' fees and costs.

### Title VII, Texas Labor Code Chapter 21 and 42 U.S.C. § 1981:  Retaliation

128. Parker incorporates the preceding paragraphs as if restated.

129. FedEx is an employer as defined by 42 U.S.C. §2000e(b) and Tex. Labor Code § 21.002(8).

130. Parker is an employee as defined by 42 U.S.C. §2000e(f) and Tex. Labor Code § 21.002(7).

131. Parker was qualified to perform his job duties at FedEx.

132.  As an employee of FedEx, Parker was in a contract with FedEx for 42 U.S.C. § 1981.

133.  During his employment, Parker engaged in activity protected by Title VII, Texas Labor Code Chapter 21 and 42 U.S.C. § 1981. Parker reported to Clarke that Wooten was making harassing and offensive comments to him because of his Jewish race and religion and his Muslim religion.

134.  Parker regularly made these reports to Clarke.

135.  Though Parker regularly reported this harassing conduct to Clarke, FedEx took no action against Wooten. Even after Wooten twice threatened to fight Parker on January 13, 2021 and had to be physically restrained from attacking Parker, FedEx still took no action against Wooten.

136.  Wooten knew of Parker's complaints to Clarke about Wooten's harassing and hostile behavior.

137.  To retaliate against Parker, Wooten goaded Parker on February 20, 2021 by making multiple harassing and offensive statements during the workday. That Wooten did so was confirmed by other FedEx employees.

138.  At the end of the workday, Wooten took Parker's personal tool charger off of Parker's truck and refused to return it to Parker. Wooten returned the tool charger only after Parker yelled at him. Though Parker had tools in his hand when he yelled at Wooten, he did not threaten Wooten with the tools.

139. Parker then reported to Clarke Wooten's actions in making the hostile and offensive statements about his race and religion on February 20th and also Wooten's actions in refusing to return to tool charger.

140. Only after Clarke confronted Wooten about Parker's complaint, Wooten made the false allegation that Parker had threatened him and caused him to fear for his life.

141. When Wooten made this false allegation, Wooten knew of Parker's complaints about him to Clark on January 13, 2021 and also on February 22, 2021. This false allegation was the catalyst for Parker's termination.

142. Though FedEx investigated Wooten's allegation, its investigation was tainted. Clarke allowed Wooten to read statements from other witnesses before Wooten prepared his own statement. FedEx discounted evidence it received in the investigation favorable to Parker and terminated Parker. Clarke had targeted Parker for termination before Clarke knew that Parker's wife was Indian and that Clarke had made hostile and offensive comments about Indians.

143. In the investigation, FedEx learned of the hostile and offensive comments made to Parker by Wooten about his race, religion and his wife's national origin. In the investigation, FedEx confirmed through witness statements these actions had occurred.

144. Parker's reports of the hostile work environment and discriminatory conduct to FedEx in the investigation was additional protected activity by Parker. When FedEx decided to terminate Parker, it knew of his protected conduct.

145. FedEx fired Parker shortly after Parker engaged in protected activity.

146. FedEx's firing of Parker is an adverse employment action in retaliation for Parker's protected activity.

147. Parker would not have been fired by FedEx had Parker not engaged in protected conduct by reporting Wooten's hostile, harassing and offensive comments about Parker's Jewish race and religion and his Muslim religion.

148. But for Parker making those protected reports, Wooten would not have made the false allegation about Parker that was the catalyst for Parker's termination. But for those false allegations, Clarke would not have been able to manipulate the statements submitted by witnesses and to tell the witnesses to "stick to their statements" so the shop could "be a better place."

149. FedEx's retaliatory actions were taken with malice and/or a reckless disregard for Parker's rights.

150. FedEx's retaliatory actions damaged Parker.

151. Parker seeks to recover the damages to which he is entitled for FedEx's retaliation in violation of Title VII, Texas Labor Code and 42 U.S.C. § 1981, including equitable relief, the recovery of his back pay, front pay, fringe benefits, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest and attorney's fees and costs.

**Jury Trial**

152.  Parker demands a trial by jury.

**Prayer**

WHEREFORE, Plaintiff Jake Parker prays this Court enter a judgment declaring

the acts and practices of Defendant violate the Title VII, Texas Labor Code Chapter 21

and 42 U.S.C. § 1981 and enter such other and further relief to which Plaintiff is just

entitled.

Respectfully submitted,

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald
State Bar No. 11656750
Southern District of Texas Bar No. 13465
Fitzgerald Law, PLLC
8150 N. Central Expy, 10th Floor
Dallas TX 75206
214.265.9958 (direct dial)
karen@fitzgerald.law

Attorney for Plaintiff Jake Parker